**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

J.D.I.S.                                                          PETITIONER

v.                                                       No. 4:26-cv-184-BJB

BRISON SWEARINGEN, ET AL.                         RESPONDENTS

**\* \* \* \* \***

### MEMORANDUM OPINION & ORDER

After the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at \*2, \*11 (6th Cir. May 11, 2026), the Court ordered the Government to either release the Petitioner or afford him a bond hearing. Order (DN 25) at 2. In a subsequent status report, the Government indicated that the case should be closed for a different reason: "Petitioner was *not* provided a bond hearing or released because" an immigration judge had "granted Petitioner's application for voluntary departure." Status Report (DN 26) at 1 (emphasis added). In granting the application, the Immigration Judge reportedly ordered that the Petitioner "remain in custody until he or she departs from the United States." *Id.* (quotation marks omitted). That, the Government says, exercised the judge's authority under 8 C.F.R. § 1240.26(b)(3)(i), "which permits an immigration judge to 'impose [such] conditions as he or she deems necessary to ensure the alien's timely departure." *Id.* at 2. An immigration judge's authority to impose conditions, the Board of Immigration Appeals has held, "includ[es] the continued detention of the alien until his or her departure." *Matter of M-A-S-*, 24 I. & N. Dec. 762, 765–66 (BIA 2009) (citing 8 C.F.R. § 240.25(b) and holding that immigration judges, akin to USCIS officers, "may attach to the granting of voluntary departure any conditions it deems necessary …, including the posting of a bond, continued detention pending departure, and removal under safeguards").

The Petitioner has objected to the Government's request to close the case, however, and has renewed his request for immediate release. This Court's prior order, the latest filing notes, required either a bond hearing or release. Motion to Enforce (DN 28) at 1–2 (citing Order at 2). And voluntary departure, J.D.I.S. observes, is neither. Given that, the Petitioner concludes the Government has "fail[ed] to comply" with the Court's order and ought to "be held in contempt." *Id.* at 1.

1

Does the Government's acceptance of a petitioner's application for voluntary departure and request to close this case, despite the prior release-or-bond order, amount to contempt? And does any other legal authority compel Petitioner's immediate release pending voluntary departure?

No.

First and foremost, the Government's response was not contemptuous; if anything, it was, well, responsive. The Court's bond-or-release order rested on the Petitioner's pending removal proceedings and the regulations authorizing a pre-removal detention hearing for those detained under § 1226. Order at 1–2. Because J.D.I.S. was apparently, but not necessarily, detained on that basis according to the Sixth Circuit's ruling, the Court invited the Government to "promptly update this Court" on "the status of the Petitioner, and [on] any new or additional facts relevant to these proceedings." *Id.* at 2. The Government's status report did just that. As the Petitioner points out, the status report indicated that he was no longer held pending the outcome of contested removal proceedings because an immigration judge had granted the Petitioner's voluntary-departure application on May 4, eleven days before the Court's order. *See* Motion to Enforce at 5; IJ Order (DN 26-1) at 1.

That means the Government's authority to detain the Petitioner doesn't depend on 8 U.S.C. § 1226(a), which permits detention "pending a decision on whether the alien is to be removed." That decision is no longer pending: "at the conclusion of [removal] proceedings," the Immigration Judge decided to grant the Petitioner his request for voluntary departure "in lieu of removal." IJ Order at 3. So the bond-hearing process authorized by the Government's regulations implementing § 1226(a) no longer appears to apply. The Government's clarification of the factual record to that effect, at the Court's request, was entirely appropriate.

Specifically, the Government identified an alternative basis for detention—one entirely independent of § 1226 and the purported detention authority the Sixth Circuit rejected. The Petitioner appears to contend that this new basis—detention pending voluntary departure—is unlawful, instead, under "the Fifth Amendment's Due Process Clause." Motion at 8. Supreme Court precedent, however, gives this Court no authority to act, at least not at this juncture. True, "the government's ability to detain noncitizens is not limitless." *Lopez-Campos*, 2026 WL 1283891, at *12. And after removal proceedings have concluded, the Government may detain an alien past six months only if it can show a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). But that's the high-water mark of constitutional due-process protection recognized by the Supreme Court. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 300–01 (2018) (declining to extend *Zadvydas*); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022) (same). And even if *Zadvydas* applied with full force to the Petitioner, he could get no help

2

from it: his "period of prior postremoval confinement," *Zadvydas*, 533 U.S. at 701, is currently measured in weeks, not months.

In any event, it's hardly clear that if Petitioner *had* received just the sort of detention hearing to which he says he was entitled, the process and product would've differed in any meaningful way. The Immigration Judge's decision to grant voluntary departure and require security, after all, necessarily addressed the question whether Petitioner's detention should continue after it shifted from a pre-removal to a pre-departure posture. Granting voluntary departure required the Immigration Judge to decide, among other things, that the Petitioner "is, and has been, a person of good moral character" and that the Petitioner "has the means to depart the United States and intends to do so." 8 U.S.C. § 1229c(b)(1). Then the judge decided, after examining the Petitioner's application, that predeparture detention was warranted. *See* IJ Order at 3. Whether a differently labeled detention hearing might've led to a different outcome is a question of pure conjecture. The Court has no basis to disagree with the Immigration Judge's decision—or to speculate whether or how another hearing might turn out differently.

Furthermore, Petitioner hasn't pointed to any legal mandate for this Court to review the substance of an immigration judge's voluntary-departure determination (or any appended conditions). And seemingly none exists. According to Congress, whether to grant voluntary departure in lieu of removal is a discretionary choice vested in the Attorney General (or his agents): "No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure." § 1229c(f). And "no court shall have jurisdiction to review … any judgment regarding the *granting* of relief under section … 1229c," either. § 1252(a)(2)(B) (emphasis added). So any argument that the Immigration Judge should've released the Petitioner pending his voluntary departure, for instance, lies beyond this Court's remit.

The Immigration Judge's decision, therefore, appears to fall squarely within discretionary—and indeed unreviewable—authority granted by Congress. And the Government's response to that decision in this litigation evinces no bad faith. Absent from the Petitioner's motion to enforce, and worth underscoring here, is the context in which the immigration bar, Justice Department lawyers, and district judges are operating. The law governing pre-removal detention, the Petitioner's own approach to the pre-removal proceedings, the volume of immigration habeas filings, and the Government's prompt responses all suggest the best efforts to handle important and evolving questions under taxing circumstances. This in no way diminishes the importance of Petitioner's arguments or the burdens of detention—or the Government's obligations of candor and timeliness. But neither does it call for sanctions or contempt.

Going forward, as the Motion notes, the law appears to allow a petitioner to "withdraw" his "voluntary departure request before expiration of the departure period." *Dada v. Mukasey*, 554 U.S. 1, 21 (2008). Given the unclear (though undoubtedly earnest) reasons offered by J.D.I.S. regarding his decision to seek release pending voluntary departure, what process might follow such a decision is not clear, either. Based on the record before the Court, the rules surrounding voluntary departure, and the nature of removal regulations as construed by *Lopez-Campos*, however, this Court appears to lack any basis to find his pre-departure detention unlawful, whether in the abstract or in the absence of a pre-voluntary-departure bond hearing. At a minimum, no such authority is evident in the Petitioner's latest motion. Nor, given these undisputed factual developments, does this habeas petition appear to seek any other pre-removal relief within this Court's authority to grant. Were Petitioner's detention to continue for an extended period without imminent resolution, *see generally Zadvydas*, 533 U.S. at 701, then a different request for a different sort of relief might ripen. But absent a contrary showing, within the next 10 days, regarding Petitioner's current conditions, the Court will recognize as moot Petitioner's request for a pre-removal detention hearing and close the case.

### ORDER

The Court denies the Petitioner's motion to enforce (DN 28).

Benjamin Beaton, District Judge
United States District Court

May 29, 2026

4